HENRY PEYSER, an Infant, by DAVID PEYSER, his Guardian ad Litem, Appellant, v. THE CONEY ISLAND AND BROOKLYN RAILROAD COMPANY, Respondent.

*Negligence — presumption, on a motion by the plaintiff for a new trial, that the defendant was not negligent — credibility of witnesses, not determined on a motion for a new trial on the ground of newly discovered evidence* — falsus in uno, falsus in omnibus.

Where upon the trial of an action, brought to recover damages for personal injuries 'alleged to have been sustained by reason of the negligence of the defendant, the questions as to the defendant's negligence and the plaintiff's freedom from contributory negligence were submitted to the jury, and the jury found a verdict in favor of the defendant, the court, in passing upon the merits of an application made at the Special Term for a new trial on the ground of newly discovered evidence tending to establish the negligence of the defendant, will consider that the jury found that the defendant was not negligent.

It will not be determined upon an application for a new trial of an action on the ground of newly discovered evidence, whether the new witnesses are entitled to credit or not. That question belongs to the trial court, and the motion must be disposed of on the assumption that the affidavits presented by the party moving for a new trial, in so far as they are not either in terms or substance contradicted, are in all respects true.

If a witness upon the trial of an action testifies falsely in one particular, his testimony may be entirely disregarded by the jury.

APPEAL by the plaintiff, Henry Peyser, an infant, by David Peyser, his guardian *ad litem*, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 22d day of January, 1894, denying the plaintiff's motion for a new trial on the ground of newly discovered evidence.

*Otto Horwitz*, for the appellant.

*Wm. N. Dykeman*, for the respondent.

PARKER, J.:

Plaintiff on Decoration Day, 1891, fell from the front part of the latter of two of defendant's cars, which, coupled together, were making a trip from Brooklyn to Coney Island. The fall resulted in the loss of both his legs, which were crushed by the wheels of the car.

He attempted to convince the jury on the trial of the action that the injury was due to the negligence of the defendant.

The court submitted to them two questions: *First.* Was the defendant negligent? *Second.* Did plaintiff's conduct contribute in any degree to the injury?

The jury rendered a verdict in favor of the defendant, but whether it was founded upon a finding that the defendant was not negligent or that the plaintiff's negligence contributed to the result the record does not inform us.

Therefore, in passing upon the merits of the application made at Special Term for a new trial, upon the ground of newly discovered evidence not strictly cumulative, tending to establish the negligence of defendant, we must dispose of the question as if the jury found that the defendant was not negligent.

Whether the testimony, which the plaintiff by the affidavits of proposed witnesses shows he will be able to produce upon a new trial if one be granted, be of such importance as to make it the duty of the court, in the proper exercise of the judicial discretion committed to it in such cases, to grant the application, will be more readily apprehended if the issues presented by the pleadings and some of the incidents of the trial be first brought to mind.

The cars of the defendant company were run by electricity, the motor car being in front and fully inclosed, as are street cars generally. It was connected with a second car, which was open and ordinarily called a summer car, the connection being made by means of chains. In the second car there was no electrical apparatus whatever, and it should not have received from the motor car any portion of the electricity conducted to it.

Plaintiff alleges in substance in his complaint that the injury was caused under the following circumstances : That when leaving the station at West Brighton the second car upon which he had a seat was crowded, so much so, that a number of persons were obliged to stand up. That immediately in front of him was standing a woman past middle life, and as a matter of politeness he gave her his seat, and thereafter continued to stand until by a sudden jerk of the car he lost his balance, and was forced to grasp a railing upon the car for support. That his grasp, although strong, did not avail to protect him from injury, because, owing to the defective

condition of the electrical apparatus employed to propel the cars, he received an electrical shock of such force that he was hurled from the car and under the wheels, which in passing over his legs crushed and severed them.

Upon the trial plaintiff's individual testimony fully supported the allegations of his complaint. His testimony as to the reason why he was in a standing position, and the location of the spot on the car where he was standing at the time of the alleged sudden jerk, and the violence of the jerk itself, was corroborated by his companions, Ike Silver, Morris and Harris Goldstein and Samuel Spies. The last of the four witnesses named further corroborated him as to the direction in which he fell, and as to his claim that in falling he grasped an iron post which supported the roof of the car, with his left hand, and being swung around, seized the dashboard of the car with his right hand, but as he did so he lost the grip which his left hand had on the stanchion which supported the roof, and so he grasped the dashboard also with the left hand. Whether he received an electric shock at that moment, as he testifies, was not of course corroborated by any one. He did not produce any evidence tending to show that the electrical apparatus was not in good working order, no evidence showing that it was so far out of repair that the dashboard of the trailing car, upon which he was riding, had become charged with electricity which was awaiting but the completion of a circuit to pass on.

The plaintiff produced two so-called experts, to whom hypothetical questions were put, based in part upon the testimony of the plaintiff, to the effect that he had received an electrical shock which loosened his hold and threw him to the ground.

Substantially, the evidence touching the presence of electricity in the trail car at the moment of his falling, consisted of plaintiff's assertion that he did receive a shock.

In view of the fact that the defendant produced a number of experts, each of whom testified that it was an utter impossibility that he should have received a shock when he grasped the dashboard of the car, it is at once apparent that his statement that he did receive into his body a current of electricity may have impressed the jury most unfavorably as to the reliability of his testimony. Upon the question of defendant's negligence, the testimony of plain-

tiff's witnesses that the car started so suddenly and with so violent a jerk as not only to cause the plaintiff to fall from the car but to occasion the fall of others, although without serious consequences as to them, entitle him to have the jury say whether the accident was thus occasioned. But the defendant asserted that plaintiff's fall was not due to a sudden jerk of the car which caused him to lose his balance, but rather to a foolhardy attempt on his part to pass from the trail car to the motor car while they were in motion. So, when the jury came to pass upon this issue between the parties, if they were of the opinion that plaintiff's testimony about receiving an electrical shock was untrue, quite naturally his testimony to the effect that the car was started with a sudden jerk may have been regarded as of little or no value. For, if a witness speak falsely in one thing, his testimony may be disregarded by the jury in all things, a proposition too frequently stated not to have found lodgment in some of the jurors' minds. If it were not a doctrine of the law, conscientious and experienced jurors would be likely to reach a conclusion not different.

The learned trial judge, in his charge to the jury, especially reminded them that they might consider his testimony in regard to an alleged electrical shock upon the " question as to whether or not you will give credit to the plaintiff and his story."

A further quotation from the charge of the court at this point will be of aid in measuring the value of testimony of the character of that which the plaintiff asks permission to prove upon a retrial :

" Upon the subject that I have referred to, the jerking of the car, and the position of the plaintiff, if you find that the plaintiff's testimony and that of his friends is not reliable in that respect, then the defendant would necessarily be entitled to a verdict. If that is so the plaintiff has still failed to carry out the obligation imposed upon him of showing you how the accident occurred. But, if you find that the plaintiff's version of that was right, then you come to another state of facts, or series of facts, in his story which you must believe before you can find a verdict for him, and that is, did he receive the electrical shock, for it is on the question as to whether or not you will give credit to the plaintiff and his story that all this matter of electricity in this respect is valuable. What does he say ? He says that he was there in that position in which he might have

made himself secure, but for receiving a shock of electricity coming from the motor car. Well, gentlemen, you have heard the testimony on that subject, and I am going to leave that to you without much comment. Here is this motor car with certain equipment, with certain appliances, with certain machinery described to you by the witnesses upon the stand. You have heard how every particle of that car which could conduct electricity was constructed. You have heard how those beams which were non-conductors of electricity were placed, and from which it is claimed, on the part of the defendant, it would be simply impossible that electricity could get from that motor car into the rear car. You will take all the testimony into consideration and say whether or not it was possible that the electricity could escape under any conditions, according to the testimony for the defendant, and for the plaintiff, too, from that motor car to the dashboard of the other car."

Now, it is quite clear that the learned court regarded plaintiff's assertion, that he had received an electrical shock while his hands grasped the dashboard, as so thoroughly overborne by the testimony of the scientific witnesses produced by the defendant, as to really present no question for the jury in that respect. The shock was alleged by the plaintiff as one of the acts of negligence on the part of defendant which contributed to his injury. If his evidence tended to show it, it was his right to have had that question presented to the jury for consideration. But it was not done, doubtless for the reason already suggested. Nor was an exception taken by plaintiff's counsel to the omission of the court to instruct the jury that they should pass upon that question, probably for the reason that plaintiff's counsel appreciated that his client's assertion would necessarily be regarded by the jury as completely overthrown by the positive testimony of the scientific witnesses, that it was an impossibility that plaintiff should have received the shock to which he testified.

Now, plaintiff presented on the motion the affidavits of William Harnett and Charles H. McNary — affidavits which, if true, show that it was not only possible for the plaintiff to have received the shock to which he testified, but, further, that it was substantially inevitable that he should have received it.

Their affidavits were to the effect that the electrical apparatus was

defective, but in what manner let the affidavit of McNary speak. Harnett's affidavit is to the effect that he was on that day the conductor in charge of the cars in question. That on a prior trip between Prospect Park and King's Highway, but on the day of the injury, he, while attempting to pass from the trail car to the motor car, received an electrical shock, which caused him to let go his hold. When he reached King's Highway he reported the fact to Charles H. McNary, the electrician in charge of defendant's car works, whom he informed that he "would not go on with the car, and that it was not fit to run, and I (he) left the car on the track in front of the power house."

He made a like report to the superintendent of the defendant. And all of this took place before the injury of the plaintiff. McNary, defendant's electrician, corroborates fully so much of Harnett's affidavit as refers to the report made by Harnett to him. He further states that the car was "turned in" after the accident, and then he made an examination of it for the purpose of ascertaining how the trail car had become electrically charged, and "found that the controlling cable of the motor car had come in contact with one of the armature leads of said car. The controlling cable is an endless wire running from one end of the car to the other around a sprocket wheel, and returning to the end from which it started. Upon an examination of the car in question I found that the controlling cable was not properly insulated; I found that it had rubbed against the armature lead, which is the wire which carries the electric current to the armature, and the cable, thus rubbing against the armature lead, had worn through the insulation, and the car had become charged going in one direction. This armature lead is kept fastened to the floor of the car by cleats so that it cannot come in contact with the controlling cable; but when I examined the car immediately after it was 'turned in,' as aforesaid, I found that these cleats had fallen out or broken off, and that said armature lead came in direct contact with the controlling cable, whereby the insulation on said armature lead had become worn right through by the constant rubbing occasioned by said contact. After I discovered what caused the defect in the insulation, I immediately repaired the same by winding insulating tape around the wire and replacing the cleats that had fallen out or broken off.

"I am informed that on the trial of this action the plaintiff, Henry Peyser, testified that when he found himself falling outward toward the street, he grasped with his left hand the upright which was on the first seat to the roof of the car, and swinging around he grasped the front platform of the rear car with his right hand, that is, the dashboard, and having then lost his grip with his left hand, which was on the rod, he also grasped the dashboard with his left hand, and that while he was so falling, and while his hands were on the dashboard, he thought his feet were on the step of the car. He could not tell then whether his feet slipped off, or what next happened, all that he remembered was that he had received an electric shock.

"Assuming all of this testimony to be true, with the defective insulation of said car as I found it, it would be inevitable that said plaintiff, in the position in which he testifies he was, would receive an electric shock the moment his foot or any part of his body came in contact with the drawbar, or any part of the iron work passing across the end of the trail car under the platform, which the drawbar slid back and forth on. This would be a necessary result of the fact that the motor car was charged, and the circuit would be completed through his body by his foot coming in contact with said iron, and having hold of the dashrail his body would carry the current to the brake chain, and so on to the ground. The electric shock which he would thus receive would necessarily cause him to relax his hold on the dashrail, as testified to by him, and cause him to fall to the ground.

"The wearing off of the insulation, as above stated, was not and could not have been a sudden wearing off, but a gradual one, and it is certain that if the car had been examined prior to each trip that the defect would have been readily discovered."

In the light of the statement which we have made of the issues and incidents of the trial, including the charge of the court, we have but to read the affidavits of Barnett and McNary respecting the matters which they say they will testify to on a new trial, to realize that such testimony, if believed, will likely produce a different result. Defendant in its answering affidavits on the motion sought to discredit Harnett and McNary. McNary it claims to have discharged, but this assertion he denies in a rebutting affidavit.

Harnett it is admitted, resigned, but the defendant says of him that he now keeps a drinking saloon, where people of low order congregate.

Harnett admits that he sells liquors, but denies that either his house or his customers are of the character asserted in defendant's affidavits.

Sullivan, defendant's superintendent, denies that Harnett reported to him the condition of the car, as alleged in his affidavit, but, as was held in *Upington* v. *Keenan* (21 N. Y. Supp. 699), Presiding Justice VAN BRUNT speaking for the court, the question of credibility is one for the jury.

Subsequently the *Upington* case was cited and followed in *Phelps* v. *Delmore* (26 N. Y. Supp. 279), the court saying: " Whether such new witnesses are entitled to credit or not, ought not to be determined upon this motion. That question belongs to the trial court, as was very properly said in *Upington* v. *Keenan.*"

In the disposition of this question, then, it will not be assumed that the witnesses speak falsely, nor will the question of their credibility be passed upon.

Practically, then, the question must be disposed of on the assumption that plaintiff's affidavits, in so far as they are not either in terms or substance contradicted, are in all respects true.

If these premises be correct, it follows that plaintiff's motion for a new trial, on the ground of newly discovered evidence, should have been granted.

As these facts were within the knowledge of defendant's employees, and the witnesses to prove them were present in court during the trial in obedience to the direction of defendant's officers, although not called, the plaintiff was not negligent in failing to discover the facts in time to prove them on the trial, and the plaintiff should not be charged with the costs as a condition of granting the motion.

The order should be reversed, with ten dollars costs and the printing disbursements to abide the event of the action, and the motion for a new trial granted.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Order reversed, with ten dollars costs and disbursements **to** abide the event, and motion granted.